IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**NASRIN AFJEH,**                          CASE NO. 3:21 CV 778

        Plaintiff,

        v.                                        JUDGE JAMES R. KNEPP II

**THE VILLAGE OF OTTAWA HILLS,**
**et al.,**
                                      **MEMORANDUM OPINION AND**
        Defendants.                   **ORDER**

### INTRODUCTION

*Pro se* Plaintiff Nasrin Afjeh brings this action under 42 U.S.C. § 1983 against the Village of Ottawa Hills ("the Village"), as well as several of its administrators, alleging violations of the First, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and Article I, §§ 1.02, 1.03, 1.05, and 1.11 of the Ohio Constitution. (Doc. 5). Individual defendants include Kevin Gilmore, John Wenzlick, Marc Thompson, Todd Seifried, Paul Bishop, Kathleen O'Connell, Jeffrey Gibbs, Sarah McHugh, Patricia Koury, Edward Shimborske III, John Straub, Sam Zyndorf, and Zac Isaac ("Defendants"), all members or former members of Village government, each in their official and individual capacities. *Id.* Defendants filed a Motion for Judgment on the Pleadings seeking to dismiss all claims asserted against them. (Doc. 30). Plaintiff opposed (Docs. 42 and 43) and Defendants replied (Doc. 45). In their Motion, Defendants asserted, among other defenses, the affirmative defenses of *res judicata*, various forms of absolute, qualified, and municipal immunity, and the statute of limitations.

For the reasons stated below, Defendants' motion is granted in part and denied in part.

BACKGROUND

Plaintiff, a resident of Ottawa Hills for several decades, and the Village have a long history of litigation in both state and federal court. In most of these cases, Plaintiff has alleged various instances of discrimination by the Village government against her. Plaintiff is well known locally for her opposition to Village policies.

Her Amended Complaint, Opposition, and Supplemental Exhibits to the Opposition primarily detail these previously litigated issues. These include: allegations of retaliation by the Village for opposing a tax levy, inaccurate minutes for Village meetings, placement of a streetlight just outside Plaintiff's home, Village government business conducted on federal holidays, Village objections to conditions of Plaintiff's yard and home, Village opposition to a sign criticizing Village government in Plaintiff's yard, failure to obtain a zoning permit for an addition to her home, physical battery by a Village employee at a government meeting, ongoing harassment by Village police and officials, and unspecified claims of denial of due process and abuse of process (Docs. 5, 42, and 43).

There are three not previously litigated incidents Plaintiff describes in her Amended Complaint. The first took place in 2013, when Plaintiff applied for a permit from the Village for an accessory structure in her backyard. (Doc. 5, at 11). After submitting her application, Plaintiff corresponded for several months with members of the Zoning Commission through her lawyer but was not issued the permit. *Id.* On one occasion, Plaintiff asked Defendant Gilmore about the status of her application; Gilmore replied, "Take the sign down and I will see what we can do." *Id.* The Zoning Commission inquired repeatedly about the nature of the structure. *Id.* at 12. Plaintiff maintains her application met the zoning requirements for the permit. *Id.* The Village government

2

neither granted nor denied the permit application, which remains pending. *Id.* In 2013, Plaintiff and her lawyer stopped attempting to get the permit application approved. *Id.* at 11-12.

The second new incident Plaintiff describes took place on April 16, 2019, at a Village Zoning Commission meeting. *Id.* at 5. Plaintiff stated she had a citizen comment. *Id.* Defendant Gilmore said there would be no citizen comments. *Id.* Plaintiff asked whether she could comment, and Defendant Gilmore reiterated that there are no citizen comments at Zoning Commission meetings. *Id.* He then told Plaintiff, "If you speak up again, I'm not going to accept that." *Id.* The other public officials at the meeting said nothing in response. *Id.* Later in the meeting, other members of the public were permitted to make citizen comments. *Id.*

The third new incident Plaintiff describes took place on March 11, 2021, during a Village safety committee meeting conducted online via online video conferencing platform Zoom. *Id.* at 6. This was a committee meeting of Village Council regarding "Bancroft [Street] pedestrian improvement, food truck regulation, and police vehicles." *Id.* Plaintiff indicated she wanted to ask some questions. *Id.* Defendant Gibbs indicated he did not want Plaintiff to speak. *Id.* Defendant Wenzlick then muted Plaintiff on the Zoom call. *Id.* The remaining officials present said nothing in response. *Id.* at 6-7.

## STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Civil Rule 12(c) is reviewed under the same standard as a Rule 12(b)(6) motion. *Coley v. Lucas Cnty.*, 799 F.3d 530, 536–37 (6th Cir. 2015). When deciding either motion, this Court presumes all factual allegations in the complaint to be true and makes all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A complaint will only survive if it states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To do so, the complaint must state factual allegations that allow this Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). A complaint is not required to contain "detailed factual allegations," but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Twombly*, 550 U.S. at 555. *Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam).

## DISCUSSION

Plaintiff's claims can be sorted into two categories and will be discussed in that order: First, the previously litigated claims; second, the new claims.

Previously Litigated Issues

The majority of Plaintiff's Complaint describes previously alleged and litigated claims against Defendants. Defendants argue these claims are barred by the doctrine of *res judicata*. (Doc. 10, at 14).

Plaintiff has previously litigated her grievances regarding: a court order to abate nuisances on her property (*Vill. of Ottawa Hills v. Afjeh*, 2006 WL 1449819 (Ohio Ct. App.)), many alleged incidents of harassment by Village police and administrators (*Afjeh v. Vill. of Ottawa Hills*, No. CI04-1513 (Lucas Cnty. Ct. Com. Pl.)), her civil claim against Defendant McHugh for assault and battery (*Afjeh v. Vill. of Ottawa Hills*, 2015 WL 5050526 (Ohio Ct. App.)), a previous failure to obtain a zoning permit for an addition to her home (*State ex. rel. Afjeh v. Vill. of Ottawa Hills*, 2004 WL 835860 (Ohio Ct. App.)), various abuse of process claims (*see, e.g.*, *Afjeh v. Vill. of Ottawa Hills*, 2015 WL 5050526 (Ohio Ct. App.)), the Village's desire for her to take down her longstanding political yard sign (*Vill. of Ottawa Hills v. Afjeh*, 2004 WL 3017241 (Ohio Ct. App.)),

4

and various due process claims related to some of these incidents (*see, e.g.*, *Vill. of Ottawa Hills v. Afjeh*, 2012 WL 121087 (Ohio Ct. App.)). In many instances, Plaintiff attempted to appeal these matters to the Ohio Supreme Court and the U.S. Supreme Court; those Courts have taken up none of her appeals (*see, e.g.*, *Afjeh v. Vill. of Ottawa Hills*, 580 U.S. 867 (2016) (cert. denied)).

Plaintiff also admits to additional litigation and court judgments regarding her political yard sign (Doc. 42, at 2), the death of a dog (*Id.* at 7), denial of Plaintiff's requests for government records (*Id.*), the planting of trees in the public right of way (*Id.* at 13), installation of a streetlight near Plaintiff's house (*Id.*), the scheduling of a local government meeting in a church (*Id.* at 14), and assessment of neighborhood property values (*Id.* at 27).

*Res judicata* dictates a final judgment on the merits of a claim precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat a prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). It bars relitigation of issues brought before the court and issues or defenses that should have been raised in previous actions. *Id.* The purpose of this doctrine is to promote the finality of judgments, increase certainty, discourage successive litigation, and conserve judicial resources. *Westwood Chem. Co. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). "A subsequent action is subject to a *res judicata* bar only if there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action." *Shah v. Univ. of Toledo*, 2022 WL 562559, at *1 (N.D. Ohio, Feb. 24, 2022).

Both requirements are met in this case. Plaintiff plainly states the facts and claims of her previous litigation with Ottawa Hills in her Amended Complaint. (Doc. 5). As listed above, these claims resulted in court judgments, which now bar her from bringing these claims again.

5

<u>New Claims</u>

Plaintiff alleges 42 U.S.C. § 1983 claims against Defendants for each of the three new incidents described in her Complaint: tabling of Plaintiff's 2013 accessory structure permit application, Plaintiff's attempt to comment at the April 16, 2019 zoning commission meeting, and Plaintiff's attempt to comment at the March 11, 2021 safety committee meeting. (Doc. 5). Defendants argue these claims are barred by the statute of limitations, various forms of immunity, and lack of municipal liability. (Doc. 10, at 14).

Section 1983 does not, on its own, serve as a source of substantive rights, but merely serves as a mechanism for enforcing individual rights secured elsewhere. *Moldowen v. City of Warren*, 578 F.3d 351, 376 (citing *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation omitted)). To bring a successful § 1983 claim, Plaintiffs must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law. *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).

Plaintiff alleges violations of the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Doc. 5, at 22-24). Plaintiff also alleges violations of the Constitution of the State of Ohio. *Id.*

*Ohio Constitution*

Plaintiff's alleged violations of the Ohio Constitution do not state a claim under § 1983. States cannot create federal constitutional rights actionable under § 1983. *Wilson v. Morgan*, 477 F.3d 326, 332-33 (6th Cir. 2007) (citing *Harrill v. Blount Cnty.*, 55 F.3d 1123, 1125-26 (6th Cir. 1995). Section 1983 is only available for violations of the United States Constitution or other federal laws. *See, e.g., Ohio ex rel. Faulker v. City of Middletown*, 688 F. App'x 377, 380 (6th Cir. 2017). Additionally, Ohio "has refused to recognize a private cause of action for violations of the

6

Ohio Constitution when it is determined that there are adequate remedies provided by statute or administrative process." *Williams v. Nice*, 58 F. Supp. 3d 833, 839-40 (N.D. Ohio 2014) (quoting *Provens v. Stark Cnty. Bd. of Mental Retardation & Dev. Disabilities*, 64 Ohio St. 3d 252, 261 (1992). In her Complaint, Plaintiff asserts violations of the state constitution only as § 1983 claims. (Doc. 5, at 22, 24). For this reason, to the extent Plaintiff asserts the actions taken in each of the three new incidents she describes are violations of the Constitution of the State of Ohio, the Court dismisses these claims.

*Fourth Amendment*

Plaintiff alleges violations of her Fourth Amendment rights by the Village and other Defendants. (Doc. 5, at 24). The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. Plaintiff states no facts in her Complaint that indicate any search or seizure. As discussed above, in order to survive a motion for judgment on the pleadings, a complaint must amount to more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Because Plaintiff does not describe what facts might have amounted to a violation of her Fourth Amendment rights, all Fourth Amendment claims are dismissed.

*Statute of Limitations*

The first of the three remaining issues is Plaintiff's pending appeal of her 2013 application to the Village zoning commission for a zoning permit for an accessory structure. Plaintiff alleges violations of her Fifth and Fourteenth Amendment due process rights by the Village and Defendants in their refusal to either grant or deny the permit. (Doc. 5, at 11). Plaintiff states she is able to make this claim because a decision on the permit remains pending.

7

A litigant need not wait for a decision on a zoning matter before pursuing a due process claim. The requirement of procedural finality before a plaintiff could bring certain kinds of Fifth and Fourteenth Amendment claims was eliminated in 2019; a plaintiff now has an actionable claim as soon as the alleged violation occurs. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2168 (2019). Even prior to the *Knick* decision, the Sixth Circuit has not required finality in order to bring due process claims related to zoning disputes, particularly for procedural due process claims, where "the allegedly infirm process is an injury in itself." *Nasierowski Bros. Inv. Co. v. City of Sterling Heights*, 949 F.2d 890, 893-94 (6th Cir. 1991). Plaintiff was free to bring her claim on the matter in 2013.

In Ohio, the statute of limitations for constitutional claims brought via § 1983 is two years. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855-56 (6th Cir. 2003). The two-year period begins "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997). Plaintiff states she gave up seeking a decision on her permit at some point in 2013. (Doc. 5, at 11-12). This would put the end of the relevant statute of limitations at some point in 2015. Plaintiff has filed her claim approximately six years too late; thus, the Court dismisses all claims related to Plaintiff's 2013 zoning permit application. This includes all claims against Defendants Zyndorf, Straub, and Isaac, whom Plaintiff states are not relevant to her remaining claims. (Doc. 5, at 4).

What remain are Plaintiff's claims of violations of her First Amendment rights when she was prevented from speaking at the 2019 and 2021 meetings.

*2019 Zoning Commission Meeting*

Plaintiff alleges First Amendment violations by the Village and Defendants related to her inability to comment at the 2019 Zoning Commission meeting. (Doc. 5, at 5-6, 22-23). Plaintiff

8

alleges Defendant Gilmore prevented her from speaking as an audience member at the zoning meeting. *Id.* at 5. Plaintiff alleges Defendants Bishop, Thompson, Koury, McHugh, O'Connell, and Seifried failed to intervene in order to allow her to speak. *Id.* at 5. Defendants argue they are shielded from liability by the doctrine of qualified immunity. (Doc. 10, at 14).

Qualified immunity is an affirmative defense which shields government officials performing discretionary functions from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012). To overcome this defense, Plaintiff must show Defendants violated her rights and that such right was clearly established. *Id.* The right said to have been violated must be defined "in light of the specific context of the case, not as a broad general proposition." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

Whether a restriction on speech is permissible depends on the type of forum in which the restriction applied. Local government meetings are not traditional public forums where "the government's regulatory powers are at their weakest." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518-19 (6th Cir. 2019) (citing *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009)). Such a meeting "cannot accommodate the sort of uninhibited, unstructured speech that characterizes a public park" and is rather "a 'designated' and 'limited' public forum." *Id.*

In a limited public forum, the government can make "time, place, or manner" restrictions unrelated to content, as long as "they are narrowly tailored to serve a significant government interest, and . . . leave open ample alternative channels for communication[.]" *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Local governments can also make content-based restrictions on public comment as long as they "are reasonable in light of the purpose served by the forum and

9

are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). Viewpoint discrimination, which "does not neutrally treat an entire subject as off limits, but rather permits some private speech on the subject and only disfavors certain points of view," is not permissible. *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021) (internal citations omitted).

At the Zoning Commission meeting, Plaintiff alleges Defendant Gilmore prohibited her from speaking before she could state the substance of her comment in any way. (Doc. 5, at 5). This prohibition was not conditioned on Plaintiff's violation of time, place, or manner restrictions, as she was not provided an alternative or appropriate method to comment; rather, it was a blanket ban on her speech at this meeting. *Id.* Other members of the public were permitted to speak during this meeting, despite Defendant Gilmore's earlier statement to Plaintiff that there would be no citizen comments at the meeting. *Id.*

Defendants argue this was a content-neutral regulation meant to "assure an orderly and efficient meeting." (Doc. 30, at 9). Defendants further argue that because "Gilmore could not have known of her opinions or viewpoints before she expressed them", the restrictions on Plaintiff's speech were viewpoint-neutral. *Id.* at 10. Defendants incorrectly argue that singling out an individual to prevent them from speaking altogether is necessarily less restrictive than ending an individual's speech after the content and viewpoint of their speech has become apparent.

The right to speak publicly in a limited public forum, subject to the types of reasonable restrictions described above, is clearly established law. "The First Amendment clearly protects the right to speak publicly" about matters of public concern. *Paige v. Coyner*, 614 F.3d 273, 280 (6th Cir. 2010). While there are plenty of cases where a local government's reasonable restrictions were

upheld, the basic right to engage in public comment at public meetings at all has never been disputed. *See, e.g.*, *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010).

While it may be the case that Defendants are correct in alleging they "had legitimate historical bases to be concerned that Plaintiff might stray away from the purpose of the meeting and the subject under discussion" (Doc. 30, at 15), that is an issue appropriate for summary judgment. At the pleadings stage, the Court takes all facts in the light most favorable to the non-moving party. *Total Benefits Plan. Agency*, 552 F.3d at 434. Plaintiff has alleged facts amounting to a cognizable § 1983 claim against Defendant Gilmore for violating her First Amendment rights in this instance.

Plaintiff's allegations against Defendants Bishop, Thompson, Koury, McHugh, O'Connell, and Seifried amount to a claim that Defendants failed to intervene with Defendant Gilmore's prohibition on Plaintiff's speech. (Doc. 5, at 5). There is no clearly established law that would have required Defendants to intervene.

A defendant generally bears no responsibility for the unlawful actions of another; for a defendant to be held liable in most instances, "it must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991). Additionally, failure to intervene claims are generally only cognizable against law enforcement officials failing to act to prevent the use of excessive force. *See, e.g.*, *Burley v. Gagacki*, 729 F.3d 610, 620 (6th Cir. 2013) (citing *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). The Court can find no instance in which a government official was required to intervene to protect a First Amendment right.

11

Plaintiff has not alleged Defendants Bishop, Thompson, Koury, McHugh, O'Connell, and Seifried violated clearly established law at the zoning meeting. Accordingly, they are afforded the affirmative defense of qualified immunity, and the Court dismisses all claims against them arising out of this incident.

*2021 Safety Committee Meeting*

Similar in nature to her allegations related to the 2019 meeting, Plaintiff alleges First Amendment violations by the Village and Defendants related to her inability to comment at the 2021 safety committee meeting, which was held online via Zoom. (Doc. 5, at 6, 22-23). The safety committee meeting concerned matters of local legislation on pedestrian safety, regulation of food trucks, and "police vehicles". (Doc. 5, at 6). Plaintiff alleges Defendant Wenzlick muted her on the Zoom meeting, which prevented her from speaking as an audience member. *Id.* at 6. This action was "prompted by the behavior of [Defendant] Gibbs." *Id.* Plaintiff alleges Defendants O'Connell and Shimborske failed to intervene in order to allow her to speak. *Id.* Defendants argue they are shielded from liability by the doctrine of legislative immunity. (Doc. 10, at 14).

Absolute legislative immunity is an affirmative defense which makes local legislative officials immune from § 1983 claims arising out of their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). It protects "all actions taken in the sphere of legitimate legislative activity." *Id.* at 54. Whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.*

Plaintiff has previously litigated claims of a First Amendment violation by local council members stopping her from speaking at a Village legislative meeting. The court in *Afjeh v. Village of Ottawa Hills*, 2010 WL 1795973 (N.D. Ohio) took pains to note that "several courts have held that moderating the speech and activity of public attendees at a local legislative meeting is

12

legislative activity protected by absolute immunity." *Afjeh*, 2010 WL 1795973, at *2 (citing *Artus v. Town of Atkinson*, 2009 WL 3336013, at *3–*5 (D.N.H.) (finding absolute immunity for moderator at town meeting who ordered attendee to stop taking photographs); *Timmon v. Wood*, 633 F. Supp. 2d 453, 460 (W.D. Mich. 2008) (finding absolute immunity for city council members who raised points of order concerning propriety of a citizen's comments at a council meeting); *Carlow v. Mruk*, 425 F. Supp. 2d 225, 236–39 (D.R.I. 2006) (finding absolute immunity for moderator of local meeting who prohibited videotaping and ejected a member of the public); *Avila v. Est. of Kroogman*, 2006 WL 214032, at *3 (D.Conn. Jan. 27, 2006) (finding absolute immunity for chair of community development committee meeting who requested that an argumentative participant leave)).

As in Plaintiff's 2010 case, as well as in the cases cited therein, Defendants' muting of Plaintiff and lack of response to this action during the legislative meeting conducted online in 2021 fall within the sphere of legislative activity and are protected by absolute legislative immunity. The Court dismisses all claims against Defendants Wenzlick, Gibbs, O'Connell, and Shimborske relating to this incident.

*Municipal Liability*

Plaintiff seeks also to hold the Village liable under § 1983 for the actions of individually named Defendants at these meetings. (Doc. 5). Local governments can only be held liable for purposes of § 1983 when the constitutional deprivation occurs as the result of an official custom or policy of the municipality. *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017) (citing *Monell v. Dept. of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 691 (1978)). A municipality cannot, on the other hand, be held liable under § 1983 under a theory of *respondeat superior*. 436 U.S. at 691.

Additionally, "[i]f no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Furthermore, "a suit under § 1983 against a defendant 'in his official capacity' is equivalent to a suit against the local government entity." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989). All claims Plaintiff makes against Defendants in their "official capacity" are accordingly treated by this Court as claims against the Village.

Because Plaintiff has been unable to establish any constitutional violations by any individual Defendants other than Gilmore, she fails to state cognizable claims against the Village for the actions of these Defendants.

With regards to Plaintiff's remaining claim against the Village related to Defendant Gilmore's alleged constitutional violation, municipal liability based on official custom or policy is available in five instances: express municipal policy; widespread practice so permanent as to constitute a custom with the force of law; the decision of a person with final policymaking authority; failure to train likely to result in constitutional violation; or failure to meaningfully investigate allegations of constitutional violations. *Jones v. City of Brunswick*, 704 F. Supp. 2d 721, 739 (N.D. Ohio 2010) (internal citations omitted).

While Plaintiff appears to list the long record of her litigation against the Village in an attempt to establish a practice by Village officials so widespread and longstanding as to amount to an official policy (Doc. 5), she neglects the fact that in most of these cases, courts held the Village had not violated Plaintiff's rights. *See, e.g.*, *Afjeh v. Vill. of Ottawa Hills*, No. CI04-1513 (Lucas Cnty. Ct. Com. Pl.). Additionally, she alleges no particularized instances in which Defendant Gilmore or any other Village official denied her First Amendment rights in a manner similar to the

2019 incident. Plaintiff fails to establish a municipal liability claim under the requirements of *Monell*.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants' Motion for Judgment on the Pleadings (Doc. 30) be, and the same hereby is, DENIED as to Plaintiff's § 1983 claim against Defendant Gilmore for a violation of her First Amendment rights at the April 16, 2019 Zoning Commission meeting, and GRANTED as to all other claims.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE