IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**NASRIN AFJEH,**      CASE NO. 3:21 CV 778

    Plaintiff,

    v.      JUDGE JAMES R. KNEPP II

**VILLAGE OF OTTAWA HILLS, et al.,**

    Defendants.      **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

*Pro se* Plaintiff Nasrin Afjeh originally brought this action under 42 U.S.C. § 1983 against the Village of Ottawa Hills and several of its administrators asserting violations of the First, Fourth, Fifth, and Fourteenth Amendments. (Doc. 5). The only remaining defendant is Kevin Gilmore, Mayor of the Village. Currently before the Court is Defendant Gilmore's Motion for Summary Judgment. (Doc. 49). The motion is fully briefed and ripe for decision. For the following reasons, the Court grants Defendant's motion.

## BACKGROUND

Plaintiff is a longtime resident of Ottawa Hills and has a lengthy history of litigation against the Village in both state and federal court. In the present case, this Court granted Defendants' motion for judgment on the pleadings (Doc. 30) in part and dismissed all but one of Plaintiff's claims. *See* Doc. 47. Plaintiff's final remaining claim concerns an April 16, 2019, Village Zoning Commission meeting. (Doc. 5, at 5). Plaintiff alleged in her Amended Complaint that Gilmore (hereinafter "Defendant") prevented her from making a public comment at the meeting, though several other individuals were permitted to make public comments. *Id.*

Defendant submitted an affidavit in which he stated Zoning Commission meetings in the Village are convened for the limited purposes of considering zoning variance applications, special use permits, appeals from land use decisions, and similar matters. (Doc. 49-1, at 2). At meetings, after a roll call and approval of prior meeting minutes, the Mayor (Defendant) asks any member of the public wishing to speak on a matter on the meeting agenda to swear an oath to tell the truth; the Village Administrator then describes the matter on the agenda, describes the Village administration's position on it, and allows the sworn-in commenter to speak on the issue. *Id.* There is no general open-microphone public comment period at Zoning Commission meetings. *Id.*

Defendant's affidavit also makes several statements regarding Defendant's history with Plaintiff. Defendant states Plaintiff "has been a frequent attender of Village Council meetings, Zoning Commission meetings, Committee meetings, disciplinary meetings, and others . . . [she] has often been argumentative, disruptive, quarrelsome, demanding, confrontational and accusatory. She frequently seeks to discuss issues that are not directly relevant to the meetings' agenda items, often revisiting issues resolved long ago." *Id.* at 3. Defendant states that at the Zoning Commission meeting in question, he "was concerned that if [he] departed from the general rule that there is no open microphone public comment period by unsworn citizens during a Zoning Commission meeting, [Plaintiff] would stray away from the purpose of the meeting." *Id.* at 4.

Audio Recording

In an audio recording of the meeting,[1] Defendant called the meeting to order (Meeting Recording, at 2:58); Village Administrator Marc Thompson called roll of the Zoning Commission (3:05); and the previous meeting's minutes were approved (3:25). Defendant then said, "Anyone

---

1. Manual notice of Defendant's filing of the audio recording can be found at CM/ECF Docs. 50 and 51.

wishing to speak tonight, uh, if you could please stand up to take an oath." (3:28). Plaintiff then said, "I just have a comment." (3:33). Defendant continued, "Do you swear and affirm to tell the truth, the whole truth, and nothing but the truth?" (3:36). Several people can be heard saying "I do." (3:40). Thompson began describing the first agenda item (zoning variances for a detached garage at a resident's house); Plaintiff interrupted to say, "What happened to the zoning citizen comments?" (4:07). Defendant said, "There are no citizens' comments, and if you speak up again, I'm going to … I'm not going to accept that." (4:08-4:17). Plaintiff said, "I can't have a comment?" (4:19). Defendant said, "No, there are no citizens' comments, there never are." (4:20). Thompson then continued describing the first agenda item. (4:28).

A member of the public, Michelle McGrath, addressed the Commission at Defendant's invitation to explain why she and her husband would like to build the proposed detached garage. (5:45). Commission members asked McGrath a few questions, and she answered. (6:00). Later in the meeting, another member of the public, Todd Kime, explained the second agenda item (zoning variances for a resident family's planned addition onto their home) at the Commission's invitation; Kime appears to be a builder or engineer hired by the family (15:08). Thomas Flanigan, a member of the family seeking to build onto their home, also spoke. (15:48; 16:10). No other member of the public can be heard speaking at any point during the meeting.

Meeting Minutes

The meeting minutes of the April 16, 2019, meeting state that "[m]embers of the audience included Kate Backoff, Michelle McGrath, Duane Ankney, Nasrin Afjeh [Plaintiff], Todd Kime, Thomas Flanigan, and Mark Koury." (Doc. 49-1, at 7). It states "Mayor Gilmore . . . administered the oath to Kate Backoff, Michelle McGrath, Duane Ankney, Todd Kime, Thomas Flanigan, and

Marc Thompson." *Id.* The minutes document the statements of Zoning Commission members and the sworn-in audience members; no mention is made of any statements by Plaintiff. *Id.* at 7-8.

Defendant's Description of the Meeting

Defendant stated that at the April 16, 2019, meeting, he asked anyone wishing to speak at the meeting to stand up to take an oath. (Doc. 49-1, at 3). Plaintiff said, "I just have a comment." *Id.* Defendant proceeded to administer the oath to those who had stood; Plaintiff did not join in taking the oath. *Id.* Defendant said there were two agenda items to discuss; Thompson introduced the first item, proposed variances for a detached garage at 3640 West Bancroft Street. *Id.* at 4. Plaintiff said, "What happened to the citizens' comments?" *Id.* Defendant said, "There are no citizens['] comments, and if you speak up again, I'm not going to accept that." *Id.* Defendant stated he "understood her request was that the meeting include an open microphone 'citizens comment' period like that which is provided at Village Council meetings, but which is not part of the format for Zoning Commission meetings." *Id.*

Plaintiff then said, "I cannot have a comment?" *Id.* Defendant responded, "There are no citizens['] comments, there never are." *Id.* Defendant stated his "reference [for this response] was to an open microphone citizen comment period which is . . . not part of the meeting format for Zoning Commission meetings." *Id.* Defendant stated Plaintiff did not speak or give any indication she wished to speak for the remainder of the meeting. *Id.*

Plaintiff's Description of the Meeting

Plaintiff also submitted an affidavit. *See* Doc. 76, at 33-41. In relevant part, the affidavit stated that at the April 16, 2019, meeting, Plaintiff "wished to make a zoning comment regarding the property at 3640 W. Bancroft St. [She] had objections to the variance under review regarding the size of the detached garage, extra height, [and] extra footage. [She] did not feel that the criteria

4

. . . justified a variance." *Id.* at 36-37. Plaintiff's affidavit stated that during the meeting, she said, "I just have a comment," "I affirm," "What happened to the zoning citizen comments?", and "I can't have a comment?". *Id.* at 37. Plaintiff stated she "took [Defendant]'s statement of 'there are no citizens['] comments, and if you speak up again, I'm not going to accept that,' as a threat of possible ejection if [she] spoke, and that [she] was totally silenced from speaking at all in the meeting." *Id.* Plaintiff stated she was silent for the remainder of the meeting.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record

upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

## DISCUSSION

The only remaining count in this case is Plaintiff's 42 U.S.C. § 1983 claim for violation of her First Amendment rights by Defendant at the April 16, 2019, Zoning Commission meeting, in relation to which Defendant has filed the instant motion for summary judgment. (Doc. 49). Additionally pending are Defendant's objection to Plaintiff's opposition brief exhibits (Doc. 77), Plaintiff's motion to stay proceedings (Doc. 85), and Defendant's motion to strike Plaintiff's supplemental disclosures (Doc. 86). The Court addresses each in turn below.

<u>Motion for Summary Judgment</u>

Plaintiff asserts a claim under § 1983 that Defendant denied her the ability to comment at the 2019 meeting in violation of her First Amendment right to free speech. (Doc. 5, at 5-6, 22-23). Defendant argues he is shielded from liability by qualified immunity. (Doc. 49, at 8). The parties' evidence of the events of the meeting is essentially identical. *See supra*.

Qualified immunity shields certain government officials from civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012). A defendant is not entitled to qualified immunity if (1) he violated a plaintiff's right and (2) such right was clearly established. *Id.* "[Q]ualified immunity operates to ensure that before they are subjected to suits, officers are on notice their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The purportedly violated right must be defined "in light of the specific context of the case, not as a broad general proposition." *Johnson v. Mosely*, 790 F.3d 649, 654 (6th Cir. 2015). "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a

reasonable official would understand that what he is doing violates the right . . . in the light of pre-existing law the unlawfulness must be apparent.'" *Hope*, 536 U.S. at 739 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[T]he First Amendment does not guarantee persons the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. For Krisha Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Local government meetings are not traditional public forums, but rather are "designated" or "limited" public forums. *Youkhanna v. City of Sterling Heights*, 934 F.3d 508-518-19 (6th Cir. 2019). Forums created by a government entity that are "limited to use by certain groups or dedicated solely to the discussion of certain subjects" are limited public forums. *Pleasant Grove City v. Summum*, 555 U.S. 460, 470 (2009). Zoning or planning commissions are typically considered limited public forums. *See, e.g.*, *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 385 (6th Cir. 2008); *Youkhanna*, 934 F.3d at 519.

In a limited public forum, "the State is not required to . . . allow persons to engage in every type of speech." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001). "Time, place, or manner" restrictions on speech unrelated to content are acceptable in such forums if "they are narrowly tailored to serve a significant government interest, and . . . leave open ample alternative channels for communication." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Content-based restrictions on speech are acceptable if they "are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). Viewpoint discrimination, which "does not neutrally treat an entire subject as off limits, but rather permits some private speech on the subject and only disfavors certain points of view," is not permissible. *Ison v. Madison Loc. Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021).

*Content-Based Restriction*

Defendant argues his statements to Plaintiff were a permissible form of content-based restriction on speech. (Doc. 49, at 10). Such a restriction must only be "reasonable in light of the purpose served by the forum and . . . viewpoint neutral." *Cornelius*, 473 U.S. at 806.

The only members of the public invited to speak at the meeting were those who had direct connections to the zoning variances at issue – McGrath, who sought a variance for her property; Flanigan, who sought a variance for his property; and Kime, who planned to perform the construction work for Flanigan. (Meeting Recording at 5:45, 15:08, 16:10). When Plaintiff asked if she could "have a comment", Defendant told her "there are no citizens' comments." *Id.* at 4:19. Defendant stated he interpreted Plaintiff's question as regarding "an open microphone 'citizens comment' period like that which is provided at Village Council meetings, but which is not part of the format for Zoning Commission meetings." (Doc. 49-1, at 4).

Defendant's statement to Plaintiff effectively confined public speech to that made by individuals with zoning issues on the agenda whom the commission invited to speak. Defendant argues this was a content restriction to relevant comment. (Doc. 49, at 10). While Plaintiff now argues she had a relevant comment on the agenda item, there is no evidence she expressed so during the meeting. The Court agrees with Defendant that by preventing comment unrelated to specific agenda items, the Zoning Commission restricted non-relevant speech. The Sixth Circuit has held that that there is "no content-based restriction more reasonable [in a limited public forum] than asking that content be relevant." *Youkhanna*, 934 F.3d at 519. Government meetings "cannot accommodate the sort of uninhibited unstructured speech that characterizes a public park." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009). "The necessities of confining a forum to the limited and legitimate purposes for which it was created may justify the State in

8

reserving it for certain groups or for the discussion of certain topics." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

*Viewpoint Discrimination*

A content-based restriction must also be viewpoint neutral in order to be permissible. *Cornelius*, 473 U.S. at 806. This means that while a speaker may be stopped if her speech is irrelevant or repetitious, she cannot be stopped merely because the moderator disagrees with the viewpoint the speaker expresses. *White v. City of Norwalk*, 900 F.2d 1421, 1423 (9th Cir. 1990) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 60-61 (1983)). Viewpoint discrimination is essentially "an egregious form of content discrimination"; it occurs when "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

Plaintiff argues Defendant's comments amounted to a "blanket ban" on her speech specifically. (Doc. 76, at 10). She contends this constitutes impermissible viewpoint discrimination. *Id.* at 22, 26. While there is evidence that Defendant generally took issue with Plaintiff's past conduct at government meetings (*see* Doc. 49-1, at 4), there is no evidence Defendant's comments at the April 16, 2019, specifically restricted Plaintiff's speech based on her viewpoint. Defendant said to Plaintiff at the meeting, "There are no citizens' comments, and if you speak up again, I'm going to … I'm not going to accept that." (Meeting Recording, at 4:08-4:17).

Plaintiff characterizes this as a threat to her person. (Doc. 76, at 26). But it is apparent that Defendant was referring to his stance in his statements to Plaintiff that there would be no open comment period generally. *See, e.g.*, *Lowery*, 586 F.3d at 434-35 ("No doubt, some evidence . . . suggests that disagreement with the plaintiffs' viewpoint . . . prompted the denial for the second request . . . [but] no violation occurs when the same result would have occurred in the absence of

9

any illegitimate motive."); *Youkhanna*, 934 F.3d at 520 ("Irrelevant comments of any sort, from any viewpoint, were out of order."). Additionally, other members of the public present at the meeting were sworn in for public comment, but were not asked to comment on the agenda items and therefore made no public comment. *See* Doc. 49-1, at 7 (noting Kate Backoff, and Duane Ankney were sworn in); Meeting Recording, generally (reflecting neither of these individuals spoke). Finally, there is no requirement that presiding officers must enforce an acceptable restriction by "waiting to regulate the speech after hearing it." *Lowery*, 586 F.3d at 434.

Plaintiff cites two cases in support of her argument. (Doc. 76, at 22, 31). The first, *Theyerl v. Manitowoc County*, concerned a plaintiff banned entirely from speaking at a county board meeting; the court held this ban was unconstitutional. 41 F. Supp. 3d 737 (E.D. Wisc. 2014). At the outset, this case is from a district court in the Seventh Circuit and is therefore not binding on this Court. Nevertheless, there are several factors which distinguish it from the instant case. First, the record in *Theyerl* showed the county board meetings "traditionally allowed a period of time for public comments." *Id.* at 738. Defendant's affidavit statements and his statements at the April 16, 2019, meeting indicate the Ottawa Hills Zoning Commission meetings did not allow for such a period. *See* Doc. 49-1, at 2-3. And Plaintiff presents no contrary evidence. Additionally, the *Theyerl* court did not hold the meeting was a limited public forum; it therefore held any content-based restriction must meet the test for strict scrutiny. 41 F. Supp. 3d at 741. In this case, because the Zoning Commission meeting is a limited public forum, the strict scrutiny test is not applicable. *See Summum*, 555 U.S. at 470.

Plaintiff next relies on *Surita v. Hyde*, which involved another individual banned entirely from speaking, in this instance at a city council meeting. 665 F.3d 860 (7th Cir. 2011). As with *Theyerl*, this case originates outside the Sixth Circuit. The record in *Surita* also showed the city

10

council had a standing general comment period at its meetings. *Id.* at 866. Additionally, the *Surita* plaintiff was explicitly chastised by the mayor for criticizing a city employee at a rally; that criticism was used to justify the ban on the plaintiff's speech. *Id.* In contrast, Defendant's statements to Plaintiff in this case refer to the fact that no general citizen comment period would be available.

The Court finds there is no evidence of viewpoint discrimination in this instance, and the restriction to speech relevant to the Zoning Commission meeting agenda is reasonable in light of the forum's purpose and therefore constitutionally valid. Because Defendant committed no constitutional violation, he is entitled to qualified immunity.

*Other Arguments by Plaintiff*

Plaintiff devotes most of her opposition brief to several other arguments the Court finds insufficient to overcome summary judgment. She challenges the truthfulness of Defendant's evidence numerous times. *See* Doc. 76, at 9, 25. At the summary judgment stage, the Court may not weigh the evidence or make credibility judgments. *Anderson*, 477 U.S. at 255; *Harris v. City of Akron*, 20 F.3d 1396, 1403 (6th Cir. 1994). Plaintiff may submit evidence which creates a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 324. Plaintiff's affidavit statements regarding the Zoning Commission meeting, however, are nearly identical to Defendant's account of the meeting, and they create no genuine issue of material fact.

Plaintiff argues Defendant's public comment policy at Zoning Commission meetings is "capricious, inconsistent, and unfair" to her. (Doc. 76, at 5). She argues at a Zoning Commission meeting on July 17, 2003, a citizen named Joann Cousino "was permitted to speak for an extremely lengthy period[] for no relevant purpose". *Id.* Plaintiff cites to meeting minutes from that meeting, included in one of Plaintiff's prior briefs in this case; the minutes indicate Cousino complained to

the commission about the state of Plaintiff's property. (Doc. 43, at 122-23). The Court first notes that it is not clear from the meeting minutes under what circumstances Cousino spoke to the Commission. The Court also notes that whether the Zoning Commission has always enforced a relevance rule is not at issue in this case. The pertinent inquiry is whether, at the sole meeting in question, a constitutionally permissible or impermissible restriction on speech was made. Any kind of "habit, custom, or practice" evidence is applicable only to § 1983 claims against municipalities under *Monell v. Department of Social Services of the City of New York*. 436 U.S. 658, 694 (1978). A § 1983 claim brought against an individual, as is the remaining claim in this case, must be based on the specific actions of that defendant against the plaintiff. *See, e.g.*, *Phillips v. Roane Cnty.*, 534 F.3d 531, 544 (6th Cir. 2008).

Finally, Plaintiff argues Defendant is not entitled to qualified immunity because the doctrine of qualified immunity "has always been unconstitutional." (Doc. 76, at 32). Despite Plaintiff's contention that "the Supreme Court of the United States is rethinking qualified immunity," at present, it remains good law.

Defendant's Objection to Plaintiff's Exhibits

Defendant objects to the exhibits Plaintiff attached to her opposition brief. (Doc. 77). Plaintiff includes in her brief 39 pages labeled as an affidavit and a transcript. (Doc. 76, at 33-71). Defendant objects, first, to Plaintiff's additional 39 pages as in violation of the Court's order on October 13, 2023, that the opposition be limited to 30 pages. (Doc. 77, at 2). Defendant next objects on the grounds that the affidavit contains conclusory allegations, subjective beliefs, and additional legal argument and opinion, in violation of the Federal Rules of Civil Procedure and case law prohibiting testimony including legal conclusions. *Id.* at 3-5 (citing Fed. R. Civ. P. 56(c)(4); *Berry*

*v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994)). Finally, Defendant argues the transcript produced by Plaintiff cannot be authenticated. (Doc. 77, at 9).

District courts have broad discretion over discovery matters. *See, e.g.*, *Hayden v. 2K Games, Inc.*, 2020 WL 1275643, at *1 (N.D. Ohio) (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999)). While the Court agrees Plaintiff's attachments include conclusory allegations and continued legal argument, it finds that because 1) Plaintiff's account of the relevant meeting itself aligned with Defendant's account and the submitted recording and 2) the remaining material in the attachments was not relevant to the Court's analysis, it need not discard Plaintiff's attachments. Defendant's objection is overruled.

Plaintiff's Motion to Stay Proceedings

Plaintiff seeks to stay proceedings "pending review of official audio recordings" she has obtained of other government meetings over the course of the last 20 years. (Doc. 85, at 1-2). As discussed *supra*, Defendant's actions at meetings other than the April 16, 2019, Zoning Commission meeting at issue are not relevant to the legal disposition of Plaintiff's remaining claim in this case. Additionally, the Court notes that briefing in this case has been extensive and protracted. The Court finds no cause for submission of further briefing or evidence and denies Plaintiff's motion to stay.

Defendant's Motion to Strike

Finally, Defendant moves to strike Plaintiff's supplemental disclosure, Doc. 84, submitted with Plaintiff's reply to Defendant's objection to Plaintiff's opposition exhibits. (Doc. 86). Defendant argues the documents in this filing are untimely, abusive, and insulting to Defendant, had not been served upon defense counsel, and are not relevant or admissible under the Federal Rules of Civil Procedure. *Id.* at 1. Defendant seeks sanctions upon Plaintiff in the form of a public

admonishment and payment of Defendant's legal fees incurred in filing the Motion to Strike. *Id.* at 6.

The supplemental disclosure at issue displays a still image from a video displaying an individual labeled as Defendant making a commonly-recognized "OK" gesture with his left hand. (Doc. 84-1, at 1). Plaintiff then includes images identifying this gesture as a signifier of white supremacy. (Doc. 84-3, at 1; Doc. 84-4, at 1).

While the Court does not condone Plaintiff's implications in this filing, the Court also notes that briefing and communication between Plaintiff and Defendant have grown increasingly hostile as this case progresses. As this opinion resolves Plaintiff's claims in their entirety, the Court will deny Defendant's Motion to Strike.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 49) be, and the same hereby is, GRANTED; and it is

FURTHER ORDERED that Defendant's Objection (Doc. 77) be, and the same hereby is, OVERRULED; and it is

FURTHER ORDERED that Plaintiff's Motion to Stay (Doc. 85) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Strike (Doc. 86) be, and the same hereby is, DENIED.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE